**STATE of Minnesota, Respondent,**

v.

**Abdiwali HERSI, Appellant.**

No. A08–0038.

Court of Appeals of Minnesota.

March 31, 2009.

Lori Swanson, Attorney General, John J. Choi, St. Paul City Attorney, Clifford R. Berg, Assistant City Attorney, St. Paul, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; LARKIN, Judge; and STAUBER, Judge.

## O P I N I O N

LARKIN, Judge.

Appellant challenges his conviction for gross misdemeanor interference with an emergency call, arguing that the jury instructions improperly omitted a necessary element of the offense and that the evidence was insufficient to sustain his conviction. We hold that the evidence presented at trial was sufficient to sustain appellant's conviction. But because the jury instructions improperly omitted a necessary element of the offense and the omission affected appellant's substantial rights, we reverse and remand for a new trial.

## FACTS

The state charged appellant Abdiwali Hersi with one count of gross misdemeanor interference with an emergency call in violation of Minn.Stat. § 609.78, subd. 2 (2006), and one count of fifth-degree misdemeanor assault in violation of Minn.Stat. § 609.2242, subd. 1 (2006), based on an incident that occurred between appellant and his wife, F.G., on June 18, 2007. The case was tried to a jury. The evidence at trial indicates that appellant and F.G. had an argument that began after F.G. spent more than one-half hour on the phone with a friend. Appellant became upset and told F.G. that he and the couple's children wanted to spend time with her and that she should not spend so much time on the phone. During the course of the argument, appellant and F.G. allegedly threw objects at each other. A female adult who was present in the couple's apartment intervened and separated them. At some point, F.G. called 911 but did not speak when the 911 operator answered the call.

St. Paul police officers Matthew Koncar and Heather Kuchinka were dispatched to appellant's residence to investigate the 911 call. Officer Koncar testified at appellant's trial that F.G. reported that appellant struck her, and that appellant took a phone away from her and broke it. But Officer Koncar did not know the sequence of these events. Officer Koncar further testified that F.G. stated that appellant became upset when F.G. attempted to call 911 during the couple's argument and that appellant did not want her to call 911. Appellant therefore removed the battery from the phone, rendering it inoperable. Officer Koncar observed a broken landline telephone in appellant's residence.

Officer Kuchinka testified that F.G. was visibly shaken, scared, and speaking fast when the officers arrived at the apartment. Officer Kuchinka testified that F.G. told her "[a]t some point during the argument, she became fearful enough for her safety that she felt the need to call 911. And as she tried to do so, there was a struggle over the phone," and appellant "began breaking the phones and taking them away from her."

F.G. testified that appellant began to argue with her after she ended a phone conversation with a friend. F.G. testified that she threw a phone at appellant and that appellant threw it back at her. F.G. then attempted to pick up a vacuum cleaner to throw at appellant. Appellant took the vacuum away from F.G., grabbed her, and told her, "You're not going to throw things at me." At this point, another woman in the apartment intervened, and appellant went into his bedroom. F.G. testified that after appellant went into his bedroom and refused to leave the apartment, she attempted to call the police. F.G. testified that she called 911 while appellant was in his bedroom, but did not say anything when the operator answered because she didn't want appellant to hear her calling the police.

F.G. explained that the phone was broken because "we kind of exchanged tossing the telephone to one another." F.G. said she called the police because "I was very upset and because I am pregnant and I want him to leave the apartment. If I were not pregnant, I know my anger would not have raised to that level." When asked specifically if she was afraid, she stated, "No. If that was the case, I would not have said to him, 'Leave the apartment.' "

The jury found appellant guilty of interfering with an emergency call, but acquitted appellant of the assault charge. The district court imposed a stayed jail sentence and two years of probation. This appeal follows.

## ISSUES

I. Did the district court commit plain error by failing to instruct the jury that it must find, beyond a reasonable doubt, that an emergency existed at the time of the 911 call?

II. Is the evidence sufficient to support appellant's conviction of interference with an emergency call?

## ANALYSIS

### I.

■ Appellant argues that the district court's jury instructions on the charge of gross misdemeanor interference with an emergency call were inadequate because the district court did not instruct the jury that it must find, beyond a reasonable doubt, that an emergency existed at the time of his wife's 911 call. Appellant did not object to the district court's instructions or propose alternative instructions.

■ A defendant's failure to propose specific jury instructions or to object to instructions before they are given generally constitutes a waiver of the right to challenge the instructions on appeal. *State v. Cross,* 577 N.W.2d 721, 726 (Minn. 1998). "[B]efore an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). If these three prongs are satisfied, we then assess whether we should address the error to ensure fairness and the integrity of the judicial proceedings. *Id.*

■ District courts are allowed "considerable latitude" in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). "An instruction is in error if it materially misstates the law. Furthermore, it is well settled that the court's instructions must define the crime charged. In accordance with this, it is desirable for the court to explain the elements of the offense rather than simply to read statutes." *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001) (citations omitted). Finally, the district court has an obligation to clearly instruct the jury on exactly what it is they must decide. *Rosillo v. State,* 278 N.W.2d 747, 749 (Minn. 1979).

Appellant was charged under Minn.Stat. § 609.78, which provides that "[a] person who intentionally interrupts, disrupts, impedes, or interferes with an emergency call or who intentionally prevents or hinders another from placing an emergency call, and whose conduct does not result in a violation of section 609.498 [1], is guilty of a

---

1. Minn.Stat. § 609.498 (2006), criminalizes tampering with witnesses.

gross misdemeanor." Minn.Stat. § 609.78, subd. 2. The statute defines an emergency call as:

(1) a 911 call;

(2) any call for emergency medical or ambulance service; or

(3) any call for assistance from a police or fire department or for other assistance needed in an emergency to avoid serious harm to person or property,

*and an emergency exists.*

Minn.Stat. § 609.78, subd. 3 (emphasis added).

The district court's instructions to the jury defined an emergency call as "(1) a 911 call; (2) any call for emergency medical or ambulance service; (3) or any call for assistance from a police or fire department or for other assistance needed in an emergency to avoid serious harm to person or property." Thus, the district court's instruction tracked the statutory definition of "emergency call" but omitted the final qualifying phrase, "and an emergency exists." Under the plain-error analysis, we must first determine if the omission from the instruction was error.

▮▮▮ "[I]n order to fulfill [its] judicial duty, [the district court] must charge the jury upon all applicable law." *Latourelle v. Horan,* 212 Minn. 520, 524, 4 N.W.2d 343, 345 (1942). And "[d]ue process requires that every element of the offense charged must be proven beyond a reasonable doubt by the prosecution." *Cross,* 577 N.W.2d at 726. Here, the district court's instruction did not inform the jury that an emergency had to exist in order for appellant to be guilty of interference with an emergency call.

The state contends that the existence of an emergency is not a distinct element of the offense of interference with an emergency call. We disagree. "Every law shall be construed, if possible, to give ef-fect to all its provisions. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2008). Subdivision 2 of section 609.78 defines the offense of gross misdemeanor interference with an emergency call. Subdivision 3 of section 609.78 defines "emergency call" for the purposes of section 609.78. Under the plain language of subdivision 3, a call is not an emergency call unless "an emergency exists." Minn.Stat. § 609.78, subd. 3. In order to prove a violation of section 609.78, subdivision 2, the state must prove interference with an "emergency call" as that term is defined by statute. Therefore, the existence of an emergency is an element of the offense.

The state also asserts that the district court's instruction "clearly indicated that an emergency must exist contemporaneously with the call," citing the fact that the definitional language in the instruction referenced an emergency in two of its clauses. In the district court's instruction, "emergency" is used to describe the type of service and assistance requested. But the fact that emergency service or assistance is requested does not mean that an emergency actually exists. *See* Minn.Stat. § 609.78, subd. 1(4) (stating that it is a crime to "make[ ] a call for emergency medical or ambulance service, knowing that no medical emergency exists"). Absent the phrase, "and an emergency exists," the district court's instruction was inadequate to convey the requirement that an emergency had to exist at the time of the 911 call.

Subdivisions 2 and 3 of section 609.78, read together, define the elements of interference with an emergency call, and they required the state to prove, beyond a reasonable doubt, that an emergency existed

when appellant's wife called 911. The district court's instruction did not expressly inform the jury of this requirement. Consequently, the jury instructions did not fairly and adequately explain the law to the jury, and the instruction was erroneous. *See Flores*, 418 N.W.2d at 155 (stating that jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law).

 Having concluded that the instruction was erroneous, we next consider whether the error was plain. "Usually [plain error] is shown if the error contravenes case law, a rule, or a standard of conduct." *State v. Reed*, 737 N.W.2d 572, 583 (Minn.2007) (quotation omitted). An error is "plain" if it is clear or obvious at the time of appeal. *State v. Jackson*, 714 N.W.2d 681, 690 (Minn.2006). The district court's failure to properly instruct the jury on all elements of the charged offense was plain error. *See State v. Vance*, 734 N.W.2d 650, 658 (Minn.2007).

 We must next determine if the error affected appellant's substantial rights. *Griller*, 583 N.W.2d at 740. When addressing the third prong of the plain-error test, we consider whether the error was prejudicial and affected the outcome of the case. *Id.* at 741. An erroneous jury instruction is prejudicial if there is a "reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* at 741 (quotation omitted).

The supreme court has held that failure to submit an element of an offense to the jury can be harmless "when the omitted element was not contested at trial and the record contained overwhelming evidence establishing the omitted element." *Vance*, 734 N.W.2d at 660. In *State v. Ihle*, 640 N.W.2d 910, 917 (Minn.2002), the supreme court held that jury instructions that omit-

ted an element of the offense did not meet the third prong of the plain-error test where a special-verdict form required the jury to find the omitted element, and the jury found the defendant guilty of another offense that arguably required the finding of the omitted element.

But appellant's case is factually distinguishable from those in which the district court's failure to submit an element of the charged offense to the jury was deemed harmless. First, the evidence regarding whether an emergency existed was conflicting. An officer testified that F.G. reported that she called 911 because she feared for her safety. But F.G. testified that she called the police because she was very upset and wanted appellant to leave the apartment. When asked specifically if she was afraid, she stated, "No." F.G.'s testimony tended to negate the existence of an emergency. Moreover, the jury acquitted appellant of the assault charge. The finding that an assault had not been proven is consistent with a finding that no emergency existed.

At trial, appellant argued that he had not interfered with an attempt to call for police services during an emergency. Given the conflicting testimony regarding the existence of an emergency and the jury's finding that appellant was not guilty of assault, there is a reasonable likelihood that a properly instructed jury could have accepted appellant's theory of the case and acquitted appellant of interference with an emergency call. We therefore conclude that the district court's failure to instruct the jury regarding the existence of an emergency had a significant effect on the jury's verdict. *See State v. Baird*, 654 N.W.2d 105, 113 (Minn.2002) (stating that the third prong of the plain-error test is met when there is a reasonable likelihood that a properly instructed jury could have accepted the defendant's version of the

offense). Thus, the instruction constitutes plain error that affected appellant's substantial rights.

Because the three prongs of the plain-error test have been satisfied, we must determine whether reversal is necessary to ensure fairness and the integrity of the judicial proceedings. *See Vance,* 734 N.W.2d at 662 (citing *Griller,* 583 N.W.2d at 740). Factors to be considered include the strength of the evidence regarding the omitted element and whether the evidence regarding the omitted element was contested at trial. *See id.* (citing *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997)).

In this case, the evidence regarding whether an emergency existed is conflicting. Because the jury was not instructed that it had to find that an emergency existed, appellant did not have the opportunity to have the jury consider the conflicting evidence under the proper law. And the jury convicted appellant without regard to the requirement that an emergency had to exist at the time of the 911 call. We conclude that the integrity of the judicial proceedings is called into question and that fairness requires that appellant be given an opportunity to present his theory of the case to a jury under proper instructions. *See id.; Baird,* 654 N.W.2d at 114. Accordingly, we reverse appellant's conviction of interference with an emergency call and remand for a new trial on that offense.

## II.

 Appellant also challenges the sufficiency of the evidence supporting his conviction, arguing that the evidence does not establish that he knew that F.G. was making an emergency call or that he acted with the intent to interfere with such a call. When assessing the sufficiency of evidence, an appellate court's review is

"limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," was sufficient to permit the jury to reach the verdict that it did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). The verdict should stand "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that a defendant was proven guilty of the offense charged." *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004) (quotation omitted).

In this case, appellant's conviction is based, in significant part, on the testimony of the officers who responded to the 911 call. Officer Koncar testified that F.G. reported that appellant struck her, took the phone away from her, and broke it. Officer Kuchinka testified that F.G. stated that she feared for her safety when she called 911 and that appellant took the phone away from her as she called 911. Even though F.G. presented testimony that favored appellant, we must assume the jury believed the officers' testimony. *See Moore,* 438 N.W.2d at 108.

Viewing the evidence in the light most favorable to the conviction, there was sufficient evidence to support appellant's conviction. Had the jury been properly instructed, the jury, acting with due regard for the presumption of innocence and the necessity of proof beyond a reasonable doubt, could reasonably have concluded that appellant was guilty of interference with an emergency call. We nonetheless reverse appellant's conviction because the jury was not properly instructed. *See State v. Jorgenson,* 758 N.W.2d 316, 326

(Minn.App.2008) (reversing conviction and remanding for new trial based on erroneous jury instruction even though the evidence was sufficient to sustain the conviction).

## DECISION

Because the jury instructions did not inform the jury that it must find, beyond a reasonable doubt, that an emergency existed at the time of the 911 call, the jury instructions constitute plain error that affected appellant's substantial rights. We therefore reverse appellant's conviction and remand for a new trial.

**Reversed and remanded.**