**STATE of Minnesota, Respondent,**

v.

**Lonnie Donald BRANDES, Appellant.**

**No. A09–1262.**

Court of Appeals of Minnesota.

May 11, 2010.

Lori Swanson, Attorney General, St. Paul, MN, and Michael K. Riley, Sr., Nicollet County Attorney, Michelle M. Zehnder Fischer, Assistant County Attorney, St. Peter, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; LANSING, Judge; and SCHELLHAS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges a jury verdict convicting him of interference with an emergency call. Appellant argues that the evidence was insufficient to support his conviction, specifically contending that the state failed to prove that an emergency existed at the time the call was attempted. Because we conclude that the element of an "emergency" does not require the state to prove the existence of threats of violence, violence, or an underlying criminal offense, and because we conclude that the evidence was sufficient to demonstrate that an emergency existed at the time of the attempted emergency call, we affirm appellant's conviction.

## FACTS

On the morning of November 25, 2008, appellant Lonnie D. Brandes entered the

home of his mother, J.B.,[1] and told J.B. that he wanted to use her credit card to stay overnight at a casino. When J.B. told appellant that he could not use the credit card, he got upset. Appellant began arguing with J.B. about past events, stating that appellant's parents "were to blame for a lot of things that happened on the farm when he was working for [them]." J.B. told appellant multiple times to leave, but he refused to do so. In the midst of the argument, appellant's brother, Leslie, arrived at J.B.'s home. Leslie stated that he saw appellant's car parked outside the home and thought that appellant was "probably getting into an argu[ment] with [J.B.] about something." As Leslie approached the door, he could hear appellant and J.B. arguing in a tone that was "elevated more than normal." When Leslie entered the home, he observed that J.B. was becoming emotional.

J.B. told appellant that if he did not leave, she was going to call 911. Appellant still refused to leave. J.B. subsequently called 911; when the dispatcher answered the call, appellant walked out of the room. J.B. told the dispatcher that appellant had left and that she was now okay and hung up the phone. Appellant reentered the house approximately 30 seconds after J.B. ended the 911 call and again proceeded to argue with her. At trial, J.B. testified that she knew that she would not be able to get appellant to leave her home, and she did not know what else to do. She further testified that she "didn't know what [appellant] was capable of." When asked whether she was fearful, J.B. responded, "I guess you would say I was." J.B. continued to ask appellant to leave and threatened to call 911 again. Appellant refused

to leave and began arguing with Leslie. J.B. walked toward the phone, picked up the phone and turned it on. But before J.B. was able to make the call, appellant reached from behind her and grabbed the phone out of her hand. Leslie pulled appellant away from J.B., and appellant and Leslie began to wrestle, first in the kitchen and then in the garage. J.B. subsequently used her cellular phone to place another 911 call.

When Deputy Jay Link of the Nicollet County Sheriff's Office arrived at the home ten minutes later in response to J.B.'s 911 call, he could hear two men yelling.[2] Deputy Link testified that upon entering the home, he saw appellant and Leslie and observed J.B. crying in the kitchen. Deputy Link decided to get appellant out of the house. When appellant did not leave voluntarily, Deputy Link physically escorted him from the premises and arrested him for interference with an emergency 911 call. Following a *Miranda* advisory, appellant admitted taking the phone away from J.B.

Appellant was charged with and convicted of gross misdemeanor interference with an emergency telephone call pursuant to Minn.Stat. § 609.78, subd. 2 (2008). This appeal follows.

## ISSUE

Was the evidence sufficient to support appellant's conviction of interference with an emergency call?

## ANALYSIS

■ Appellant challenges the sufficiency of the evidence supporting his conviction, arguing that the evidence does not

---

1. The record reflects that at this time, appellant lived on his parents' property but in a separate residence with his wife and three children.

2. The jury also heard a recording of Deputy Link's arrival at the residence, and the loud arguing is reflected on that recording.

demonstrate the existence of an emergency at the time that J.B. attempted to call 911. In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jurors to reach the verdict that they did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). A reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004).

■ Appellant was convicted of interference with an emergency call pursuant to Minn.Stat. § 609.78, subd. 2, which provides:

> A person who intentionally interrupts, disrupts, impedes, or interferes with an emergency call or who intentionally prevents or hinders another from placing an emergency call ... is guilty of a gross misdemeanor and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both.

An emergency call is defined as: "(1) a 911 call; (2) any call for emergency medical or ambulance service; or (3) any call for assistance from a police or fire department or for other assistance needed in an emergency to avoid serious harm to person or property," and in all cases an emergency must exist. Minn.Stat. § 609.78, subd. 3; *see also State v. Hersi,* 763 N.W.2d 339, 343 (Minn.App.2009) ("[A] call is not an emergency call unless an emergency exists." (quotation omitted)).

The statute does not define "emergency" for purposes of this section, and we therefore look to its common, ordinary meaning. *See* Minn.Stat. § 645.08 (2008) ("[W]ords and phrases are construed ... according to their common and approved usage....") "Emergency" is defined as "[a] serious situation or occurrence that happens unexpectedly and demands immediate action," or "[a] condition of urgent need for action or assistance." *The American Heritage College Dictionary* 449 (3d ed. 2000).

■ Appellant contends that an emergency generally implies violence, a threat of violence, or the existence of a separate, underlying criminal offense, and therefore an argument is insufficient to constitute an emergency.[3] We disagree. Had the legislature intended to limit the crime of interference with an emergency call to those circumstances, it could have used more specific language in the definition of "emergency call." Depending on the circumstances, an argument may constitute a serious event that demands immediate action; and if the state is able to introduce evidence that proves beyond a reasonable doubt that the circumstances constituted an emergency as it is understood in its ordinary context, it has satisfied its burden on that element. It did so here.

We conclude that this record contains sufficient evidence from which a jury could have reasonably found that an emergency existed when J.B. attempted to call 911 and that appellant interfered with the call. Appellant argued vociferously with both J.B. and Leslie over an extended period of time and refused to leave despite being

**3.** While the state alleged that appellant's act of refusing to leave J.B.'s home after being asked repeatedly to do so may constitute a crime, we do not address this issue.

told multiple times to do so. J.B. testified that she became fearful when appellant returned to the house after her first 911 call and that she did not know what appellant was capable of doing. Appellant again refused to leave J.B.'s home and continued to argue with her and to fight with his brother for another ten minutes until the officer arrived. It was reasonable for a jury to conclude that this situation was a serious and sudden occurrence requiring J.B. to take immediate action.

## DECISION

Because the state does not need to prove an underlying criminal offense to show that an emergency exists and because evidence was sufficient to demonstrate that an emergency existed by the time that J.B. attempted to call 911 a second time, we affirm appellant's conviction.

**Affirmed.**