*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0015**

State of Minnesota,
Respondent,

vs.

Damien Kent Hallmon,
Appellant.

**Filed December 27, 2016
Affirmed in part, reversed in part, and remanded
Reyes, Judge**

Hennepin County District Court
File No. 27-CR-14-23354

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and Reyes, Judge.

# U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

Appellant challenges his convictions of first-degree aggravated robbery, felon-in-possession of a firearm, and fifth-degree possession of a controlled substance. He argues

that (1) the district court erred in denying his motion to suppress physical evidence; (2) the district court committed reversible error in admitting *Spreigl* evidence of his prior bad acts; (3) there was insufficient evidence to convict him; and (4) he was sentenced improperly. We affirm in part, reverse in part, and remand.

## FACTS

The challenged convictions stem from a series of events incident to a June 2014 drug sale between appellant Damien Kent Hallmon, the seller, and Z.G., the buyer. Appellant and Z.G. were acquainted prior to the sale, as appellant had sold drugs to Z.G. on a number of occasions. On this particular day, Z.G. received a ride from a friend, D.B., to a park in south Minneapolis. Z.G. had been drinking heavily before arriving at the park and was inebriated.

Z.G. testified that, upon meeting appellant in the park, appellant pulled a Walther 9mm handgun from his pocket, and two unidentified men accompanying appellant punched Z.G. and robbed him while appellant held Z.G. at gunpoint. Conversely, appellant testified that Z.G. was the aggressor, stating that after appellant told Z.G. he did not have any marijuana to sell, Z.G. pulled the gun on appellant, and demanded he hand over everything in his possession. Both men testified that they attempted to take the gun from the other man. In the ensuing struggle, the gun went off three times. Z.G. testified that the two unidentified men fled when the gun went off. Appellant was hit twice in the arm, and Z.G. was grazed behind his ear. Appellant also suffered a broken arm in the struggle.

At the conclusion of the struggle, Z.G. possessed the gun. At this point, Z.G. either offered or agreed to take appellant to a nearby hospital, and D.B. drove them both. Z.G. testified that, on the way to the hospital, he removed the magazine from the gun and gave the entire magazine and the unfired bullet from the chamber to appellant as a pacifying gesture. Appellant, on the other hand, testified that Z.G. dumped all of the bullets on the ground outside the hospital, and appellant picked up one of the bullets and put it in his pocket hoping that fingerprints on the bullet would help the police to identify Z.G. if appellant did not survive. After dropping appellant off at the emergency room for treatment, D.B. and Z.G. drove away.

At the hospital, medical personnel removed appellant's bloody clothing to treat his wounds. In response to the hospital's notification that a patient with a gunshot wound was seeking treatment, a Minneapolis police officer entered appellant's room. As medical personnel continued to treat appellant, hospital staff collected his clothing and placed it into paper bags. While a staff member was handling appellant's pants, an unfired 9mm bullet and two bags of marijuana fell from appellant's pants onto the floor. After all of appellant's clothes were bagged, the officer took possession of the bags and transported them to the Minneapolis Police Department property room. A subsequent search by the property-room clerk revealed several bags of cocaine.

Neither Z.G. nor D.B. notified the police of the incident. Instead, shortly after dropping appellant off at the hospital, Z.G. asked D.B. for a ride to St. Paul. In St. Paul, Z.G. used the gun as collateral in lieu of money to acquire methamphetamine. Between one day and one week later, after describing the events to his girlfriend, Z.G. bought the

3

gun back. Z.G.'s girlfriend shared the story with a friend, who contacted the police. Two weeks after the incident, Z.G. met with the police and turned over the gun. When the police tested the gun for DNA, both the trigger and grip returned results from at least four individuals, and appellant and Z.G. could not be excluded from contributors.

A jury found appellant guilty of one count each of first-degree aggravated robbery, felon-in-possession of a firearm, and fifth-degree possession of a controlled substance. The district court sentenced appellant to 129 months in prison for the aggravated-robbery conviction, with concurrent sentences of 60 months and 36 months for the felon-in-possession and controlled-substance convictions, respectively. This appeal follows.

## D E C I S I O N

## I. The district court did not err by denying appellant's motion to suppress evidence of the cocaine.

Appellant argues that the district court erred by denying his motion to suppress the cocaine found in his pants based on an inventory search. We disagree.

When reviewing a district court's order on a motion to suppress evidence, we review the district court's factual findings for clear error. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). However, we review whether the facts support the district court's decision to suppress evidence de novo. *Id.*

The district court found that the cocaine was not discovered until after the police seized appellant's bloody pants and performed a subsequent search in the police property room. This factual finding is adequately supported by testimony in the record and is not

4

clearly erroneous.  Based on this factual finding, the district court determined that the property clerk's search was valid under the inventory-search exception.

It is uncontested that the police at no point obtained a warrant to search appellant's pants.  Generally, under the Fourth Amendment of the United States Constitution, warrantless searches are "per se unreasonable."  *Id.*  However, inventory searches are a "well-defined exception to the warrant requirement" that "serve to protect an owner[']s property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."  *Id.* (quotations omitted).  The state bears the burden of demonstrating that the inventory-search exception applies to a warrantless search.  *Id.*

As a threshold matter, appellant argues that this exception only applies to vehicles. We disagree.  Examples of the application of the inventory-search exception include police inventories of impounded vehicles as well as administrative inventory searches incident to booking or jailing.  *See Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S. Ct. 2605, 2610 (1983) (drawing parallel between inventory search of impounded vehicle and inventory search incident to booking based on legitimate governmental interests served); *State v. Rodewald*, 376 N.W.2d 416, 420–21 (Minn. 1985) (applying *Lafayette* to search of wallet incident to booking).  Therefore, we analyze the validity of the search of appellant's clothing under the inventory-search exception framework.

Two requirements must be met for a warrantless inventory search to be valid. First, the police must have seized the item in a lawful manner.  *State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014).  Second, the scope of the subsequent inventory search

must be such that the intrusion does not exceed the caretaking function.  *State v. Holmes*, 569 N.W.2d 181, 187 (Minn. 1997).  Appellant challenges only the seizure of the pants, arguing that police could not lawfully seize the pants without seeing the cocaine in plain view first.

An item in plain view may be seized if police are lawfully present when the item is discovered and the police have probable cause to believe the item is incriminating in nature.  *State v. Zanter*, 535 N.W.2d 624, 631 (Minn. 1995).  An item is incriminating in nature if "the facts available to the officer would warrant a person of reasonable caution in the belief that [the] item[] may be contraband or stolen property or *useful as evidence of crime*."  *Id.* at 632 (emphasis added) (alteration omitted) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543 (1983)).

At the suppression hearing, by conceding that police could seize the bullet that fell from his pants under the plain-view exception, appellant effectively conceded that the police officer's presence in his hospital room was lawful.[1]  The responding officer testified that he seized appellant's clothing because he believed the blood on them would have value as evidence of the shooting of which appellant was the apparent victim.  Because the officer was lawfully present and had reasonable suspicion that the pants

---

[1] Appellant argues for the first time on appeal that the officer had no lawful reason to be in appellant's hospital room.  Appellant forfeited this argument by not raising it below.  *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).  In any case, it is without merit.  Hospitals are required by statute to notify law enforcement when treating a patient with a gunshot wound.  *See* Minn. Stat. § 626.52 subd. 2 (2012).  We agree with the district court that a police officer in the hospital room of a gunshot victim as a response to a statutorily mandated notification is lawfully present for purposes of Fourth Amendment analysis.

would be valuable as "evidence of crime," the initial warrantless seizure of appellant's pants was proper.

Because the district court did not err by determining that the warrantless search of appellant's pants was valid within the inventory-search exception and denying appellant's motion to suppress the cocaine, we affirm his conviction for criminal possession of a controlled substance.

**II.      Allowing the state to present *Spreigl* evidence of appellant's prior bad acts was an abuse of discretion requiring reversal.**

**A.      Admitting *Spreigl* evidence of an act that was not proved by clear and convincing evidence was an abuse of discretion.**

Appellant next argues that the district court committed reversible error by allowing the state to present evidence that appellant had intimated that he always carries a gun when selling drugs and had shown Z.G. a gun during a previous drug sale. We agree.

Generally, evidence of prior bad acts by a criminal defendant is inadmissible for the purpose of showing action in conformity therewith. Minn. R. Evid. 404(b); *see also State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). However, this evidence, often referred to as *Spreigl* evidence, may be admitted for limited other purposes provided certain requirements are met. Minn. R. Evid. 404(b). One requirement is that the prior act "and the participation in it by a relevant person are proven by clear and convincing evidence." *Id.* We review a district court's decision to admit *Spreigl* evidence for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

7

Z.G. testified that "[o]ne other time when I met [appellant] he kind of made it clear that he always carried a gun and he had an old .22 revolver with him."  The state argued to the district court that this past-acts evidence was relevant because "[i]f [Z.G.] knows that [appellant] is always armed and has actually seen him with a gun in the past, why wouldn't [Z.G.] choose some random other person to rob?"  The district court concluded that this evidence would not be admissible under rule 404(b) because there wasn't clear and convincing evidence that the incident occurred.  However, the district court did allow the evidence to be admitted as relevant to Z.G.'s state of mind, given that appellant was claiming self-defense.

An exception to the rule excluding *Spreigl* evidence exists where prior bad acts of the *victim* are admissible to demonstrate the *defendant's* state of mind at the time of the altercation.  *See State v. Taylor*, 258 N.W.2d 615, 620–21 (Minn. 1977) (concluding that evidence of relevant criminal convictions of victim may be admissible to bolster defendant's self-defense claim).  Here, we encounter the reverse situation.  The state sought to introduce evidence of prior bad acts of the *defendant* to demonstrate the state of mind of the *victim*.  Therefore, evidence of appellant's past acts does not fall within this exception.

The state relies on dicta from *State v. Rossberg* to argue that appellant's past-acts evidence is admissible to defeat his claim of self-defense: "[I]f the defendant claims to have acted in self-defense, the fact that the victim was afraid of the defendant might bear on whether the defendant's account is believable."  851 N.W.2d 609, 619 (Minn. 2014).  But a closer examination of the facts in *Rossberg* illuminates several key distinctions.

8

First, this situation differs factually from *Rossberg*. There, the admitted statements being challenged were statements *of a homicide victim* that were admitted as an exception to the general inadmissibility of hearsay evidence. *Id.* Here, Z.G. is not a homicide victim. Even if he were, the evidence at issue here is not a statement by Z.G. that he was afraid of appellant.

Second, the legal issue in *Rossberg* was whether an exception to the hearsay rule applied. *Id.*[2] The statements in that case were not analyzed under the *Spreigl* rule. Here, on the other hand, the evidence was not hearsay, but rather first-hand testimony about the circumstances surrounding a previous drug deal between the two men. In other words, this was evidence of the defendant's prior bad acts, not of the victim's state of mind, a crucial distinction.

The testimony by Z.G. was evidence of prior bad acts offered to demonstrate conformity therewith: during a previous deal, appellant implied he carries a gun when he is selling drugs and that he was carrying a gun; therefore, he was carrying a gun at the time of this incident. This was *Spreigl* evidence of an act that the state failed to prove by clear and convincing evidence, and no other valid exception exists to the general rule

---

[2] *Rossberg* is a case that follows from *State v. Blanchard*. 315 N.W.2d 427, 432 (Minn. 1982). In *Blanchard*, the evidence at issue was a statement made by a homicide victim that she was afraid of the defendant. 315 N.W.2d at 432. *See also State v. Ulvinen*, 313 N.W.2d 425, 427-28 (Minn. 1981) (finding hearsay statements by homicide victim that she feared her mother-in-law would poison her deemed not admissible). The *Spreigl* evidence in this case was not the type addressed by *Rossberg* and *Blanchard*. Moreover, for such evidence to be admissible under *Blanchard*, a proper limiting instruction must be given to the jury. 315 N.W.2d at 432-33. No limiting instruction was given here.

against its admissibility. Accordingly, the district court abused its discretion in admitting evidence of appellant's prior bad acts.

### B.     The admission of the *Spreigl* evidence was reversible error.

We must now determine if the admission was reversible error. *State v. Fardan*, 773 N.W.2d 303, 320 (Minn. 2009). Erroneous admission of prior-acts evidence constitutes reversible error if it was not harmless. *State v. Thao*, 875 N.W.2d 834, 839 (Minn. 2016). "An error is harmful if there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Id*. (quotation omitted). Relevant factors to consider in making this determination include the strength of evidence of guilt, the presence of a limiting instruction to the jury, and the prosecutor's reliance on the evidence in closing. *Id.*

Here, the state's evidence is far from overwhelming. The state offered no cumulative evidence that appellant had shown Z.G. a gun on a prior occasion, nor any evidence that appellant was known by reputation to carry a gun. The state offered no evidence linking appellant to the gun at any time before this incident. No witnesses other than Z.G. testified to seeing appellant holding the gun during the incident. Multiple witnesses corroborate that Z.G. possessed the gun after the incident. There is no physical evidence that supports the state's version of the events that does not also support appellant's version of the events. While not necessarily indicative of him being the non-aggressor, appellant received the gravest wounds from the altercation, and Z.G. possessed

10

the gun after the struggle. The state's case relied primarily on the testimony of Z.G., a witness who was, in his own words, "inebriated" at the time of the event.[3]

On the second factor, no limiting instruction was given to the jury.

Finally, in addressing the jury during closing argument, while the prosecutor did not specifically reference Z.G.'s prior bad-acts testimony, the prosecutor made it clear the issue of who brought the gun to the park was the central and pivotal point in the case:

> The self-defense charge is what I want to get to because this—we're kind of moving into what this really—this case is really all about.
> . . . The defense of self-defense is not available to [appellant] . . . if you find the [s]tate proves [appellant] is the one that brought the gun to the park and pulled it on [Z.G.]. . .
> So the—let me be very clear to make this decision easy for you. If you're going back in that jury room and you're talking about all this and you're thinking, you know, "I really have a reasonable doubt as to, you know, whether [Z.G.] brought it or [appellant] brought it" . . . you can basically get rid of the first two counts, aggravated robbery and prohibited person in possession of a firearm because self-defense would have excused [appellant]'s contact . . . .

The prosecutor's framing of the issue of which party brought the gun to the park as the central question of the aggravated-robbery and felon-in-possession charges would inevitably lead the jury to seek out evidence to help answer that central question—and as the district court noted, this improper *Spreigl* evidence could have enabled the jury "to

---

[3] It is also noteworthy that the state acknowledged Z.G.'s lack of credibility. During closing arguments, the prosecutor stated to the jury: "I do not have to prove to you that [Z.G.] is not a liar. If I had to prove that, I would lose this case . . . because he lied about a lot of things."

draw the conclusion that [if appellant] brought a gun last time or at some time in the past, he brought a gun this time."

Weighing these factors, we conclude that it is reasonably possible that the improper admission of appellant's past acts significantly affected the verdict regarding the aggravated-robbery and felon-in-possession charges. Therefore, the district court's improper admission of *Spreigl* evidence was reversible error.

## III.    The evidence is sufficient to support the jury's guilty verdicts for the aggravated-robbery and felon-in-possession charges.

Appellant argues that a judgment of acquittal is the appropriate remedy because the evidence presented was insufficient to support the jury's guilty verdicts for the aggravated-robbery and felon-in-possession charges. We disagree.

Despite having already found reversible error, because appellant's challenge affects the new trial, we will consider his sufficiency-of-the-evidence argument. *See Burks v. United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 2150-51 (1978). If the evidence presented against appellant was legally insufficient, "the only 'just' remedy is the direction of a judgment of acquittal." *State v. Clark*, 755 N.W.2d 241, 256 (Minn. 2008) (alteration omitted) (quotation omitted). Conversely, remanding for a new trial is appropriate where an appellate court concludes there was sufficient evidence to convict, but determines reversible error occurred during trial. *See State v. Hersi*, 763 N.W.2d 339, 345 (Minn. App. 2009) (remanding for new trial after concluding jury was improperly instructed, but state presented sufficient evidence to convict).

Appellant argues that the evidence did not preclude a reasonable possibility that he acted in self-defense. Appellant misstates the standard of review for sufficiency of the evidence. Unlike the "reasonable possibility" standard for improperly admitted *Spreigl* evidence, sufficiency of the evidence review is more stringent. When considering a claim of insufficient evidence, we must analyze the record and determine if the evidence, viewed in the light most favorable to the state, was sufficient to convict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). A verdict will be upheld where the evidence shows the jury, acting with due regard for the defendant's presumption of innocence and the necessity of the state providing proof of guilt beyond a reasonable doubt, could reasonably find the defendant guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). We assume the jury believed the state's witnesses and disbelieved evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

The burden is on the state to "prove beyond a reasonable doubt that the defendant did not act in self-defense, once the defense is raised." *State v. Spaulding*, 296 N.W.2d 870, 875 (Minn. 1980). To meet this burden, the state must negate one of the three elements of self-defense: (1) the absence of aggression on the part of the defendant; (2) that the defendant actually and honestly believed that he was in imminent danger of death or great bodily harm, and the action he took was necessary to prevent that harm; and (3) the actual and honest belief was reasonable. *Id.*

In support of this argument, in both his brief and pro se supplemental brief, appellant identifies all of the inconsistencies in Z.G.'s account of the incident, the lack of

corroboration of Z.G.'s testimony, and the lack of physical evidence in support of the state's theory of the incident. However, these factors were also identified for the jury, and assessing the credibility of witness testimony is the function of the jury. *Moore*, 438 N.W.2d at 108.

Z.G. testified that appellant drew a gun and robbed him at gunpoint. This testimony demonstrates that appellant was the aggressor, and thereby negates the first element of self-defense: the absence of aggression. We must assume that the jury believed Z.G. and disbelieved all evidence that contradicted his testimony. *See id.* Viewing the evidence in the light most favorable to the verdict, we conclude the state presented sufficient evidence for a jury to find appellant guilty of both first-degree aggravated-robbery and felon-in-possession. Therefore, the appropriate remedy is to reverse appellant's convictions for aggravated-robbery and felon-in-possession and to remand to the district court for a new trial on those charges.

Because we affirm appellant's conviction for possession of a controlled substance but reverse appellant's conviction for aggravated robbery, we do not address his argument that he was sentenced improperly.

**Affirmed in part, reversed in part, and remanded.**