**STATE of Minnesota, Respondent,**

v.

**Timothy James McCAULEY, Appellant.**

**No. A11–0606.**

Court of Appeals of Minnesota.

Sept. 4, 2012.

Review Denied Oct. 24, 2012.

Lori Swanson, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

Max A. Keller, Keller Law Offices, Minneapolis, MN, for appellant.

Considered and decided by CHUTICH, Presiding Judge; PETERSON, Judge; and STONEBURNER, Judge.

## OPINION

CHUTICH, Judge.

A jury found appellant Timothy McCauley guilty of two counts of dissemination of child pornography and 22 counts of possession of child pornography in violation of Minn.Stat. § 617.247, subds. 3(a), 4(a) (2010). McCauley now appeals his convictions, contending that (1) the term "dissemination" in section 617.247, subdivision 3(a) is unconstitutionally vague; (2) the jury instructions were plainly erroneous because they presented possession and dissemination as strict liability offenses; (3) the evidence is insufficient to support his convictions on counts two and four of the amended complaint; and (4) all 22 possession convictions should be vacated because possession is a lesser-included offense of dissemination.

Because we conclude that the issue of unconstitutional vagueness is not properly before us, the jury instructions were not plainly erroneous, and the evidence is sufficient to support all of the convictions, we affirm the convictions on all but two counts. We reverse the possession convictions on counts three and four because those convictions are lesser-included offenses of the dissemination convictions.

## FACTS

### The Investigation

The following investigative efforts revealed the presence of file-sharing software and illegal child pornography on McCauley's home computer. On June 17, 2009, an officer in the computer forensic section of the Minneapolis Police Department, Officer Dale Hanson, conducted an online search of peer-to-peer shared computer networks. The officer was looking for computer users who were sharing contraband files, such as those containing child pornography, over the Internet.

On that day, Officer Hanson identified an "Internet Protocol" address (also known as an IP address) sharing what he believed to be child pornography files using the file-sharing software "LimeWire." After partially downloading and watching one of the files from that Internet address, he confirmed that it was a pornographic video involving a young girl who appeared to be 12–14 years old. Through an administrative subpoena issued to the Internet provider, Officer Hanson obtained information about that Internet Protocol address, including the name, e-mail address, phone number, and home address of the subscriber.

About one month later, on July 23, 2009, Officer Hanson again identified what he believed to be child pornography on a shared computer network. He downloaded one video file from many that had titles suggesting they were child pornography. When he watched it, however, he was not certain whether the person in the video was a minor or an adult. Using another administrative subpoena, Officer Hanson

determined that the subscriber for that Internet Protocol address was the same as the subscriber identified in the earlier June 17 search.[1] Because the subscriber lived in Plymouth, Officer Hanson then sent his data and report to the Plymouth Police Department for further investigation.

Officer Amy Goodwin of the Plymouth Police Department received Officer Hanson's report, which identified the subscriber at the Internet Protocol address as R.H. Officer Goodwin verified the address and found that R.H. lived at the home with her husband, appellant Timothy McCauley. After obtaining a search warrant for the home, officers conducted a search on August 11, 2009.

The officers found a desktop computer in the basement of the home and determined that McCauley was the primary user of the computer. When Officer Goodwin moved the computer's mouse to "wake it up," a search results window containing several files displayed on the screen; some file names included explicit terms specifically associated with child pornography.[2]

While executing the search warrant, the officers questioned McCauley. When they asked him if he knew why they were at his house, he responded "possibly for porn." McCauley admitted to using LimeWire to download music and adult pornography, and he stated that downloading pornography is "tricky." He explained that "although he downloads mostly adult pornography, he does enjoy seeing images of 16–, 17–, or 18–year–old females." McCauley also told officers that he had no interest in child pornography and that he immediately

deleted it when it popped up on his computer.

The officers seized the computer and delivered it to the crime lab of the Hennepin County Sheriff's Office. Once there, crime lab employee Anthony Pollock searched the computer's hard drive and noted that LimeWire was installed on the computer. He found "hundreds" of adult pornography files, and also discovered 63 files that he believed could be child pornography, based on their file names. Most of these files were located in a LimeWire "Shared" folder. Pollock was not able to locate the videos downloaded by Officer Hanson on June 17 and July 23 by name; he found evidence, however, that two of those videos were previously on the computer, but had since been removed or deleted.

In addition, Pollock found a program installed on McCauley's computer called "CCleaner" that cleans or deletes various files from the user's computer. Pollock later testified that computer users often use CCleaner to get rid of illicit files, such as those containing child pornography.

Based upon the results of this investigation, McCauley was originally charged with two counts of dissemination and two counts of possession of child pornography, for the videos found by Officer Hanson on June 17 and July 23, 2009. The state amended the complaint just before trial, however, to include 21 additional counts of possession to reflect some of the files found by Pollock during his forensic examination of the computer's hard drive. A five-day trial ensued.

1. The July 23 download was from a different Internet Protocol address than the June 17 download. Officer Hanson testified that this change is not uncommon, as Internet service providers often rotate Internet Protocol addresses for their customers.

2. These explicit file names included "Pedofilia-f* * *ing 8 yr old daughter" and "9yo littlegirl displays her sweet young c* * *."

## The Trial Testimony

### Testimony Concerning LimeWire

At trial, the jury heard the following testimony about LimeWire, a software program that, until October 2010,[3] anyone could download free from the Internet. LimeWire allowed users to download content from other users, such as music or video files, then share their downloaded content. The LimeWire software on McCauley's computer was installed by "default installation," meaning that McCauley did not change any of LimeWire's default settings. One of the screens in the default installation process specifically notifies the user, "Files you download will also be shared with other users running Lime-Wire."

Once LimeWire was installed, the user could search for content by entering a keyword search. The software would search the shared folders of other Lime-Wire users and, if it found a file with a title or other data matching that keyword or keywords, it would display the file name and basic information on the user's computer. The user could then review his search results, click on one file or several, and select "download." There was also a "select all" function where the user could select all of the search results to download, without having to read through the results list.

Once a user downloaded a file, it would be saved in the user's "Shared" folder, where it would then be available to other LimeWire users to download. LimeWire would share all of the content downloaded by a user in a "Shared" folder by default, unless the user manually changed the settings.

### The Prosecution's Evidence

Concerning the dissemination-of-child-pornography counts related to Officer Hanson's investigations on June 17, 2009, and July 23, 2009, the prosecution presented the testimony of the officer about the videos that he downloaded on those days. It also presented a seven-page, single-spaced exhibit that Officer Hanson prepared listing all of the video and text files that were available for download from McCauley's computer on those two dates. These titles included two videos labeled "PTHC," which stands for "preteen hardcore."

Concerning the 23 counts of possession of child pornography, the state presented the testimony of Officer Pollock and an exhibit he prepared listing 63 possible child pornography videos found on the hard drive of McCauley's computer. The jury watched 23 of these videos retrieved from McCauley's computer, including two videos that were listed in the exhibit prepared by Officer Hanson.

### The Defense's Evidence

McCauley testified in his own defense and claimed that he was a "novice" at the computer and is "computer ignorant." He first started using LimeWire on the seized computer in about 2006 to download music. He admitted to downloading 500–600 adult pornography files, but testified that he watched only about 10–15% of them. In seeking the adult pornography, he would use search terms such as "sex," "blonde," and "f* *k." Once his search results came up, he "usually" read through or scanned the list and clicked to download the ones that interested him. Sometimes he clicked one at a time to download, sometimes five

---

**3.** On October 26, 2010, a federal district court in New York shut down LimeWire via permanent injunction in a copyright infringement case. *See* Consent Injunction, *Arista Records,* LLC v. LimeWire, LLC, No. 06 Civ. 05936(KMW) (S.D.N.Y. Oct. 26, 2010), *available at* http://down load.limewire.com/injunction/Injunction.pdf.

or six in a block, and sometimes he used "select all" to download all of his search results.

McCauley denied ever searching for child pornography or using search terms related to pedophilia. He testified that he inadvertently downloaded and opened child pornography files in the past when attempting to obtain adult pornography, but that he immediately deleted the files after he realized their content.

McCauley also testified that he never changed the default LimeWire settings and did not know that he could change them. All of the content in his "Shared" folder was therefore available for other users to download, although he claimed he did not take any affirmative action to share files. McCauley denied knowing that the child pornography videos he was charged with possessing were on his computer, and denied knowing that they were being shared via LimeWire.[4]

The jury convicted McCauley on the two dissemination counts and 22 of the 23 possession counts. The district court sentenced him to 102 months for each dissemination conviction and 60 months for each possession conviction, and ordered that all the sentences be served concurrently. The court also imposed ten years on conditional release. This appeal followed.

## ISSUES

I. By failing to challenge the constitutionality of Minn.Stat. § 617.247, subd. 3(a), at trial, did McCauley waive this issue on appeal?

II. Are possession and dissemination of pornographic work involving a minor

strict liability offenses, and if not, were the jury instructions plainly erroneous?

III. Was the evidence sufficient to convict McCauley on counts two and four of the amended complaint, relating to possession and dissemination of child pornography on July 23, 2009?

III. Because possession of child pornography is a lesser-included offense of dissemination of child pornography, did the district court err in convicting McCauley on all 22 counts of possession?

## ANALYSIS

### I. Waiver of Void–for–Vagueness Challenge

■ McCauley's first contention, that Minn.Stat. § 617.247, subd. 3(a), proscribing dissemination of child pornography, is unconstitutional under the void-for-vagueness doctrine, was not raised in the district court. Thus, the district court did not have an opportunity to consider his argument that the term "disseminate" is ambiguous.

■ The law is well-settled that this court does not generally consider issues not argued to and considered by the district court, especially where they assert constitutional violations. *Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996); *see also State v. Engholm*, 290 N.W.2d 780, 784 (Minn.1980) ("The law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal."). Because we are unpersuaded that the interests of justice require us to

4. During its deliberation, the jury asked the following question: "Charges on dissemination of pornography, of pornographic work involving a minor, what is the definition of 'dissemination' in regards to this charge? We, the Jury, cannot agree between two possible definitions. To simply make available, [or] does the State need to prove that someone received child pornography?"

reach this issue, we decline to address it for the first time on appeal.

## II. Criminal Intent for Possession and Dissemination of Child Pornography

McCauley's principal argument on appeal is whether section 617.247, subdivisions 3(a) and 4(a), define strict liability offenses,[5] or whether the state must show that the defendant acted with some level of mens rea in the actual possession and dissemination of the child pornography. Although he did not object to the jury instructions at trial, McCauley now contends that they were erroneous because they presented the dissemination and possession charges as strict liability offenses.

■ We review unobjected-to jury instructions for plain error affecting a defendant's substantial rights. *State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn.2011); *see* Minn. R.Crim. P. 31.02 (permitting review of plain error). "Under plain error analysis, we must determine whether there was error, that was plain, and that affected the defendant's substantial rights. If each of these prongs is met, we will address the error only if it seriously affects the fairness and integrity of the judicial proceedings." *Kuhlmann*, 806 N.W.2d at 852–53 (citation omitted).

The relevant portions of Minn.Stat. § 617.247 provide:

Subd. 3. **Dissemination prohibited.** (a) A person who disseminates pornographic work to an adult or a minor, knowing or with reason to know its content and character, is guilty of a felony. . . .

. . . .

5. We have recently defined a strict liability crime as " '[a] crime that does not require a mens rea element, such as traffic offenses and illegal sales of intoxicating liquor.' " *State v.*

Subd. 4. **Possession prohibited.** (a) A person who possesses a pornographic work or a computer disk or computer or other electronic, magnetic, or optical storage system . . . containing a pornographic work, knowing or with reason to know its content and character, is guilty of a felony. . . .

A "pornographic work" is one that involves, uses, or depicts a minor. Minn. Stat. § 617.246, subd. 1(f) (2010).

The jury instructions given by the trial court incorporated the elements of these statutes. The pertinent portion of the instructions is as follows:

**Possession of Pornographic Work Involving a Minor—Defined:**

The statutes of Minnesota provide that whoever, knowing or having reason to know, its content in [sic] character, possesses: (1) a pornographic work; (2) a computer disc, or computer, or other electronic magnetic or optical stored system . . . containing a pornographic work involving minors is guilty of a crime.

**Possession of Pornographic Work Involving Minors—Elements:**

The elements of possession of pornographic works are:

First, defendant possessed a pornographic work

. . . .

Second, the defendant knew or had reason to know that the content and character of the work was pornographic work involving minors.

. . . .

**Dissemination of Pornographic Work Involving a Minor–Defined:**

*Bauer,* 776 N.W.2d 462, 478 n. 3 (Minn.App. 2009) (quoting *Black's Law Dictionary* 429 (9th ed.2009)), *aff'd,* 792 N.W.2d 825 (Minn. 2011).

The statutes of Minnesota provide that whoever, knowing or having reason to know, its content and character, disseminates a pornographic work involving the use of a minor to an adult or a minor, is guilty of a crime.

**Dissemination of Pornographic Work Involving Minors–Elements:**

The elements of dissemination of a pornographic work are:

First, the defendant disseminated a pornographic work to an adult or minor.

Second, the pornographic work involved the use of a minor. . . .

Third, the defendant knew or had reason to know that the content and character of the work was pornographic work involving the use of a minor.

For the possession and dissemination offenses, the trial court also specifically defined the terms regarding knowledge, including definitions of "to know," "had reason to know," and "in conscious disregard of a substantial and unjustifiable risk." [6]

█ McCauley acknowledges that the statutory subdivisions already include an element of mens rea as to knowledge of the content and character of the works. That is, a person cannot be convicted under the statute unless he knows, or has reason to know, that the work he is charged with possessing or disseminating is a "pornographic work," which, by definition, must involve a minor. Interpreting this requirement, the Minnesota Supreme Court held that "a possessor of child pornography has 'reason to know' that a pornographic work involves a minor where the possessor is subjectively aware of a 'substantial and unjustifiable risk' that the work involves a minor." *State v. Mauer,* 741 N.W.2d 107, 115 (Minn.2007).

McCauley does not dispute the *Mauer* holding or the jury's finding that he knew, or had reason to know, that the files found on his computer were "pornographic works." [7] Instead, McCauley argues that he did not knowingly or intentionally possess or disseminate the child pornography files because he did not intend to download child pornography, and did not know that LimeWire shared his "Shared" folder with other users. Because the jury instructions did not immediately modify the verbs "disseminate" and "possess" with the word "knowingly," McCauley contends that they presented the charges as strict liability offenses and the jury was not free to consider his defense that he did not knowingly or intentionally possess or disseminate child pornography. We address his contentions as to each type of offense.

*Possession*

█ Because Minn.Stat. § 617.247, subd. 4(a), already requires mens rea for actual possession of a pornographic work involving a minor, McCauley's argument that possession is a strict liability offense is without merit. Section 617.247, subdivision 4(a), contains the explicit requirement

---

**6.** The latter definition stated, " 'In conscious disregard of a substantial and unjustifiable risk' means that the defendant was aware (1) there was a risk that the work was a pornographic work involving minors; (2) the risk was substantial; (3) there was no adequate reason for taking the risk, and the defendant disregarded the risk."

**7.** Indeed, McCauley testified that he accidentally downloaded child pornography from LimeWire in the past while attempting to download adult pornography, but that he immediately deleted the child pornography when he realized his mistake. Moreover, when asked to look at the list of files found on his computer, he admitted on cross-examination that the titles of the files clearly suggested they contained child pornography.

that a person charged with possessing child pornography must do so "knowing or with reason to know its content and character." We cannot logically separate this mens rea requirement for the content and character of a work from the actual possession of the work. A person cannot "have reason to know" a work's content or character unless he actually knows he possesses the work. Thus, it would be impossible for a person to be guilty of possession of child pornography where he does not know that he actually possesses the work, because in that situation he would also not be subjectively aware of "a substantial and unjustifiable risk" that it is a pornographic work involving a minor. *Mauer*, 741 N.W.2d at 115 (quotation omitted).

■ We conclude, therefore, that possession of child pornography as defined is not a strict liability offense, because the statutory mens rea required for knowledge of a work's content and character logically applies to the actual possession of the work as well. While this construction may not be explicit in the statute, it is necessarily implied. The jury instructions clearly conveyed the knowledge requirement and therefore were not erroneous. We affirm McCauley's possession convictions on this ground.

*Dissemination*

■ Unlike possession of child pornography, the act of disseminating child pornography under section 617.247, subdivision 3(a), presents a different question, because a person could have knowledge of the content and character of a work that he possesses without actually knowing that he disseminated it. For example, an employee could possess child pornography on a computer belonging to his employer and the employer could discover the pornography after reclaiming the computer at the end of the employment. While the possession is clearly unlawful, the employee had no intention of disseminating or sharing the pornographic works.[8] We thus address McCauley's contention that the jury instructions—despite requiring knowledge of the content and character of the pornographic work—erroneously presented dissemination as a strict liability offense.

■■ Statutory interpretation is a legal question, which we review de novo. *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012). When interpreting statutes, we must attempt to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2010). Strict liability statutes are generally disfavored in Minnesota, and the legislative intent to impose strict liability under a criminal statute must be clear. *In re Welfare of C.R.M.*, 611 N.W.2d 802, 805 (Minn.2000). "Our determination that the legislature intended to create a strict liability crime can only be reached after a careful and close examination of the statutory language, and we are to apply the 'rule of lenity' requiring penal statutes to be strictly construed in favor of a criminal defendant." *Id.* (citation omitted).

The stated purpose of the child pornography statute is

to protect minors from the physical and psychological damage caused by their being used in pornographic work depicting sexual conduct which involves mi-

---

8. This example describes the facts in *People v. Tombs*, a case in which the Michigan supreme court concluded that a defendant must have the criminal intent to distribute or promote child pornography. 472 Mich. 446, 697 N.W.2d 494, 504 (2005). In reversing the defendant's conviction, the court noted that there was "evidence that [the] defendant neither intended nor expected anyone at [the employer] to discover or view the material." *Id.* at 501.

nors. It is therefore the intent of the legislature to penalize possession of pornographic work depicting sexual conduct which involve minors or appears to involve minors in order to protect the identity of minors who are victimized by involvement in the pornographic work, and to protect minors from future involvement in pornographic work depicting sexual conduct.

Minn.Stat. § 617.247, subd. 1 (2010). Neither this legislative purpose nor any other section of the statute indicates clear legislative intent to make dissemination of child pornography a strict liability offense.

 The supreme court has noted that, in limited circumstances, the legislature may dispense with mens rea through silence in criminalizing so-called "public welfare" offenses. *See State v. Ndikum,* 815 N.W.2d 816, 819 (Minn.2012) (citing *Staples v. United States,* 511 U.S. 600, 606–07, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994)); *C.R.M.,* 611 N.W.2d at 808–10. Public welfare statutes are those that "regulate 'potentially harmful or injurious items,' including 'dangerous or deleterious devices or products or obnoxious waste materials.'" *Ndikum,* 815 N.W.2d at 819–20 (quoting *Staples,* 511 U.S. at 607, 114 S.Ct. at 1798). Notably, the state did not contend on appeal that dissemination of child pornography should be considered a public welfare offense.

The supreme court has not considered whether dissemination of child pornography meets that definition, and we decline to find here that it is a public welfare offense. Although child pornography is devastating to the children involved and has a detrimental effect on society in general, we cannot conclude under these circumstances that child pornography belongs in that limited category of criminal offenses for which no mens rea is required. *Cf. id.* at 820 (noting, for example, that

"statutes regulating dangerous drugs and hand grenades can properly be considered public welfare statutes"); *Bauer,* 776 N.W.2d at 479 ("[N]onintentional crimes generally include 'public welfare' offenses, such as traffic violations and those that incorporate specific language *negating* an intent element.").

Moreover, courts have rarely read statutes to dispense with a mens rea element for felony-level offenses that carry a severe punishment (such as possession of dangerous weapons or illegal drugs). *See Ndikum,* 815 N.W.2d at 822; *C.R.M.,* 611 N.W.2d at 806–07 ("[F]ines and short jail sentences, but not imprisonment, have historically been legitimate punishment for strict liability offenses and ... the less severe penalties attached to public welfare statutes 'logically complement' the absence of the mens rea requirement." (quoting *Staples,* 511 U.S. at 616, 114 S.Ct. at 1803)). Dissemination of child pornography is a felony-level offense, with a first conviction carrying up to seven years' imprisonment. This severe punishment further suggests that the legislature did not intend to impose strict liability for disseminating child pornography.

 In the absence of clear legislative intent to impose strict liability, and because dissemination of child pornography carries a severe punishment and is not a public welfare offense, we conclude that it is not a strict liability offense. Rather, the state must prove that a defendant *knew* he was disseminating child pornography, as well as prove that he knew the character and content of the material that he was disseminating. *See* Minn.Stat. § 609.02, subd. 9(2) (2010) ("'Know' requires only that the actor believes that the specified fact exists."); *Ndikum,* 815 N.W.2d at 822 (concluding that possession of a pistol in public is not a strict liability crime, and therefore, "to obtain a conviction, the State

was required to prove that [the defendant] knew he possessed the pistol"). Thus, to convict McCauley under Minn.Stat. § 617.247, subd. 3(a), the state had to prove that he knowingly disseminated a pornographic work involving a minor.

Given this conclusion, the first prong of the plain error test is met. *See Kuhlmann,* 806 N.W.2d at 852. Because the jury instructions did not explicitly state that McCauley must have "knowingly" disseminated child pornography, they materially misstated the law and were therefore erroneous.

▓ We conclude, however, that this error was not plain because it was not clear and obvious at the time of the appeal. *See State v. Ramey,* 721 N.W.2d 294, 302 (Minn.2006) (stating that error is plain if it "contravenes case law, a rule, or a standard of conduct"); *State v. Ihle,* 640 N.W.2d 910, 917 (Minn.2002) (stating that error is "plain" when it is "clear" or "obvious"); *State v. Griller,* 583 N.W.2d 736, 741 (Minn.1998) (stating that to satisfy the second prong, "it is sufficient that the error is plain at the time of the appeal"). The jury instructions included the elements of the crimes as stated in the statute, and also followed the standard jury instructions for possession and dissemination of child pornography. *See* 10 *Minnesota Practice,* CRIMJIG 12.105 (2010); *cf. State v. Hersi,* 763 N.W.2d 339, 344 (Minn. App.2009) (stating that a jury instruction was erroneous where it omitted a stated element of the statute: "the jury instructions did not fairly and adequately explain the law to the jury, and the instruction was erroneous").

At the time of this appeal, no caselaw or other binding authority explicitly required the state to prove that McCauley "knowingly" disseminated the child pornography. *See Griller,* 583 N.W.2d at 741. Therefore, even though the jury instructions were erroneous because they did not specify that the act of dissemination had to be knowing, this error was not plain.

▓ Further, even if the error in the jury instructions was plain, we do not believe the verdict would have been different. *See id.* (stating that plain error is prejudicial, and therefore affects a defendant's substantial rights, "if there is a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury" (quotation omitted)); *see also Ihle,* 640 N.W.2d at 917 (finding that even though the jury instructions were plainly erroneous, there was "no reasonable likelihood that a more accurate instruction would have changed the outcome"); *State v. Lindsey,* 654 N.W.2d 718, 724–25 (Minn.App.2002) (holding that even though jury instruction may have been plainly erroneous, any error did not affect the defendant's substantial rights); *but see State v. Baird,* 654 N.W.2d 105, 114 (Minn.2002) (holding that plain error in jury instructions was not harmless because there was a "reasonable likelihood ... [that] the error was prejudicial and affected the outcome of the case"). McCauley presented a defense that he did not understand how LimeWire worked and that he therefore did not know that he was sharing files. The jury was presented with conclusive evidence that McCauley did know or should have known that LimeWire shared files with others and therefore knew that he was disseminating the files.[9]

---

9. In her closing arguments, the prosecutor, in passing, suggested that it was not necessary for the jury to find that McCauley intentionally or knowingly disseminated child pornography. The bulk of her argument, however, directly addressed McCauley's defense that he did not know he was sharing the pornography, and marshaled the state's evidence contradicting the theory.

LimeWire was widely billed as a "file-sharing" program, and McCauley had used the software for over three years, downloading hundreds of files. The entire reason LimeWire existed was to allow users to share files. The program's default installation screens, which McCauley had to click through to download LimeWire, described LimeWire as "the most advanced file sharing program on the planet" and clearly informed the user that "[f]iles you download will also be shared with other users running LimeWire." Further, to download a file after a search, McCauley had to either select each file he wanted or choose "select all." The program did not automatically download files—McCauley had to take affirmative action after reviewing his search results. As he admitted, many of the files retrieved through those searches had titles clearly suggesting they contained child pornography.

In addition, the jury heard Pollock's testimony about the "CCleaner" program that he found on McCauley's computer. Specifically, Pollock testified: "I do see it installed on a lot of PC's, but it always seems to go hand-in-hand with a lot of the PC's that I do see that are running LimeWire that are involved in child pornography cases. It's one more way to help cleanup—basically hiding what you're doing." Based on this testimony, the jury could reasonably conclude that McCauley had something to hide on his computer—illegal child pornography.

The record includes further evidence that McCauley knowingly possessed and, due to the nature of LimeWire, disseminated the child pornography files. When Officer Goodwin moved the computer's mouse to "wake it up" while executing the search warrant, a search results window containing several files displayed on the screen, and some of the file names included explicit terms associated with child pornography. Her testimony suggests that McCauley had recently searched his computer for those files and therefore knew they were in his possession. Further, McCauley's statements to the police also support the jury's finding that McCauley did knowingly possess and disseminate the child pornography files. He said that downloading pornography is "tricky" and that "although he downloads mostly adult pornography, he does enjoy seeing images of 16–, 17–, or 18–year–old females."

Therefore, even though the jury instructions did not clearly require that a mens rea element apply to the act of dissemination itself, this error was not plain. Moreover, the jury could have reasonably disbelieved that McCauley was really as "computer ignorant" as he claimed and concluded that he knew and intended to possess and share the illegal files. Thus, there is no reasonable likelihood that giving the accurate instruction would have affected the outcome of the case.

### III. Sufficiency of the Evidence

■ McCauley next contends that the evidence was insufficient to convict him on counts two and four of the amended complaint, which correspond to the child pornography file viewed by Officer Hanson on July 23, 2009. In considering a claim of insufficient evidence, this court's review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004).

The parties disagree as to which video McCauley was charged with disseminating and possessing in counts two and four. None of the counts in the amended complaint specify which video they correspond to, but, when deciding whether McCauley possessed a particular video, the jury filled out a separate verdict form for each video it watched, and each form included the video's file name. The dissemination verdict forms, by contrast, did not state that they corresponded to any specific video.

McCauley argues that counts two and four correspond to the one particular video that Officer Hanson downloaded remotely from McCauley's computer on July 23, 2009. Officer Hanson testified that, upon viewing this video, he was unable to determine if the person in the video was a minor. Pollock testified that the particular video was no longer on McCauley's computer when officers seized it on August 11, 2009. The jury, therefore, did not watch that particular video, and McCauley argues that the evidence was insufficient to convict him on those counts.

The state contends that counts two and four do not correspond to the one video actually downloaded by Officer Hanson on July 23, but rather to any of the videos *available* for download from McCauley's computer on that day. The state cites Exhibit 2, a spreadsheet prepared by Officer Hanson, listing all of the suspected child pornography videos available for download from McCauley's computer on June 17 and July 23.

The jury watched two of the videos listed on Exhibit 2, concluded that they were pornographic works involving minors, and found McCauley guilty of possessing those videos. Because Exhibit 2 established that those same two videos were available for download from McCauley's computer on July 23, the state argues that the jury reasonably concluded that McCauley possessed and disseminated one or both of those videos on July 23.

Viewing the evidence in the light most favorable to the verdict, we conclude that the state's argument has merit. Because the jury found that McCauley possessed two child pornography videos on July 23, and those two videos were also available for download on that day, as shown by Exhibit 2, the evidence is sufficient to support McCauley's convictions on counts two and four, dissemination and possession of child pornography on July 23, 2009.

## IV. Lesser–Included Offenses

McCauley last argues that, because possession of child pornography is a lesser-included offense of dissemination of child pornography, all of his convictions for possession must be reversed. The state agrees that two of the possession convictions are lesser-included offenses of the dissemination conviction. In *State v. Bertsch*, the supreme court held that "possession of a pornographic work involving a minor is an included offense of dissemination of such a work." 707 N.W.2d 660, 664 (Minn.2006). Thus, a defendant cannot be convicted of both dissemination and possession of a pornographic work unless "the offenses constitute separate criminal acts. The inquiry into whether two offenses are separate criminal acts is analogous to an inquiry into whether multiple offenses constituted a single behavioral incident under Minn.Stat. § 609.035." *Id.* (citation omitted).

We agree with the parties that two of McCauley's 22 possession convictions, for counts three and four of the amended complaint, should be vacated, because they corresponded to the two dissemination convictions dated June 17 and July 23, 2009. McCauley asserts, however, that all 22 of his possession convictions should be reversed because they all result-

ed from the same single behavioral incident as the dissemination charges.

When facts are not in dispute, we review de novo "whether multiple offenses form part of a single behavioral act." *State v. Marchbanks*, 632 N.W.2d 725, 731 (Minn.App.2001). "The state has the burden to establish by a preponderance of the evidence that the conduct underlying the offenses did not occur as part of a single behavioral incident." *State v. Williams*, 608 N.W.2d 837, 841–42 (Minn. 2000). In analyzing whether multiple offenses arise from a single behavioral incident under Minn.Stat. § 609.035 (2010), we consider "whether the conduct (1) shares a unity of time and place and (2) was motivated by an effort to obtain a single criminal objective." *Bauer*, 776 N.W.2d at 478.

Applying these principles here, we conclude that these offenses were not part of a single behavioral incident. While the convictions share a unity of place—the LimeWire program on McCauley's computer—they lack a unity of time. No evidence in the record suggests that the 20 files found only after execution of the August 11 search warrant were present on the computer on June 17 or July 23, the dates of the dissemination charges. Indeed, those 20 files that comprise the possession charges are not reflected on Exhibit 2, which lists all of the files available for download on those dates.[10] The 20 possession offenses occurred nearly two

months after the June 17 dissemination offense, and nearly three weeks after the July 23 dissemination offense. *Cf. Bertsch*, 707 N.W.2d at 666 (finding that the dissemination and possession offenses were part of the same behavioral incident because the evidence suggested that they all occurred, at least in part, on the same day). The offenses therefore do not share a unity of time.

Moreover, the two dissemination offenses and the 20 possession offenses were not motivated by the same criminal objective. McCauley presumably downloaded and possessed the child pornography files for his own personal use and prurient enjoyment, which is one criminal objective. Making child pornography files available in his shared LimeWire folder, however, suggests a wholly different criminal objective—sharing those files with others.

Given the time differential and the separate criminal objectives, we conclude that the 20 possession offenses and the two dissemination offenses do not arise from a single behavioral incident. Accordingly, the district court properly convicted McCauley of 20 counts of possession arising from the files discovered after seizure of the computer.

**DECISION**

Although we now hold that Minn.Stat. § 617.247, subd. 3(a), requires knowing dissemination, because the error in the

---

10. After carefully reviewing the record, we note that three of the videos found after seizure of the computer (video numbers 15, 19, and 34), which the jury found McCauley guilty of possessing, have identical file names to three of the videos listed on Exhibit 2, suggesting they were present on McCauley's computer on July 23. Neither party noted this discrepancy in the briefs or made any specific argument regarding these three files.

Although the file names are the same, their hash values listed on Exhibit 2 are different

than the hash values of the files found after seizure of the computer. According to Officer Hanson, a hash value is a string of numbers unique to a specific file, and if the file is modified or changed, it is assigned a different hash value. Therefore, even though the three videos have the same file names as videos listed on Exhibit 2, our understanding of the technology leads us to conclude that they are not, in fact, the same files and are not lesser-included offenses of the July 23 dissemination count.

592

jury instructions as to the mens rea required for dissemination of child pornography was not plain, and because the evidence was more than sufficient to support the jury's verdict on all of the charges, we affirm. We reverse McCauley's convictions for possession on counts three and four of the amended complaint, however, because they are lesser-included offenses of his dissemination convictions.

AFFIRMED IN PART; REVERSED IN PART.