*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1479**

State of Minnesota,
Respondent,

vs.

Troy Gary Benjamin,
Appellant.

**Filed August 1, 2016
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Polk County District Court
File No. 60-CR-15-376

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Gregory A. Widseth, Polk County Attorney, Andrew W. Johnson, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his convictions of second-degree assault and domestic assault, arguing that the district court erred by failing to suppress statements that he made to the police about the offenses. Appellant also challenges the district court's imposition of sentence for the domestic-assault conviction, arguing that the domestic assault and second-degree assault arose from a single behavioral incident. Lastly, appellant challenges the sufficiency of the evidence to sustain his convictions in a pro se supplemental brief. Because the district court did not err by denying appellant's motion to suppress his statement and the evidence is sufficient to sustain his convictions, we affirm in part. But because the state has not proved that the domestic assault and second-degree assault did not arise from a single behavioral incident, we reverse the district court's imposition of sentence for the domestic-assault conviction and remand for the district court to vacate the sentence.

**FACTS**

Respondent State of Minnesota charged appellant Troy Gary Benjamin with second-degree assault, domestic assault by strangulation, and felony domestic assault. The complaint alleged that during the evening of February 28 and morning of March 1, 2015, Benjamin was drinking with his girlfriend, M.H. The complaint further alleged that during this time frame, Benjamin held a knife to M.H.'s throat, choked her, and bit her arm. Benjamin moved to suppress statements that he made to the police regarding the incident, arguing that they were taken during a custodial interrogation without a *Miranda* warning.

The district court held a hearing on Benjamin's motion and heard testimony from Benjamin's probation officer, Travis Nicholas, and Crookston Police Officer Justin Roue. Following the hearing, the district court found the relevant facts to be as follows.

Benjamin was on felony-level probation. On March 4, Nicholas and Officer Roue went to Benjamin's apartment to speak with him about M.H.'s report that Benjamin had consumed alcohol and assaulted her. Benjamin answered the door and told Nicholas that he needed to talk to him about an incident that had occurred the prior weekend. Benjamin stated that M.H. had assaulted him and that she was using alcohol and marijuana in his apartment without his permission. Nicholas asked Benjamin if he had consumed alcohol. Benjamin denied that he had done so. Nicholas also asked Benjamin if he had a garage. Benjamin said that he did not have a garage.

Another Crookston police officer, Officer Rasicot, arrived at the apartment. Benjamin asked if he was going to jail because there were two officers in his apartment. Nicholas told Benjamin that the officers routinely accompany him on probation visits for safety reasons. Officer Roue confirmed that he was there due to safety concerns.

Officer Rasicot spoke with Benjamin's rental company and learned that Benjamin did in fact have a garage. Officer Rasicot found a key on Benjamin's refrigerator, which opened the back door to Benjamin's garage. Officers Rasicot and Roue, along with Nicholas and Benjamin, entered the garage and found alcohol.

After discovering the alcohol in the garage, everyone returned to Benjamin's apartment. Benjamin sat on his couch. Officer Roue sat in a folding chair about six to eight feet away from Benjamin, and Officer Rasicot and Nicholas stood near the door to

the apartment. Nicholas again asked Benjamin if he had been drinking. Benjamin admitted that he drank alcohol over the weekend.

At that point, Officer Roue told Benjamin that they were also there to investigate a report that he had assaulted M.H. with a knife. Officer Roue told Benjamin that he did not have to talk to the officers about the incident and that he did not have to answer their questions. Benjamin responded that he had witnesses to the events in question. Officer Roue again stated that if Benjamin preferred not to talk about the incident, he did not have to do so. Benjamin replied: "I'm gonna talk to you about it." Officer Roue did not read Benjamin his *Miranda* rights.

Officer Roue interviewed Benjamin for about 45 minutes regarding the alleged assault. During the interview, Benjamin's version of the events changed. He initially said that M.H. assaulted him and that he punched a wall out of frustration and anger, but he eventually admitted that he had a knife in his hand in the kitchen during the incident. After the interview, Benjamin was arrested for an alcohol-related probation violation.

The district court concluded that Benjamin was not in custody during the interview at his home and denied Benjamin's motion to suppress his statements. The case was tried to a jury. At trial, Officer Roue testified that he interviewed Benjamin and that Benjamin stated that "he had the knife in his hand and he was in the kitchen and he pointed it at the victim and told her to cool it and calm down." The jury found Benjamin not guilty of domestic assault by strangulation, but guilty of second-degree assault and domestic assault. The district court sentenced Benjamin to serve 45 months in prison for the second-degree-assault conviction. The district court also sentenced Benjamin to a concurrent 27-month

4

prison term for the domestic-assault conviction. Benjamin appeals his convictions and sentence.

## D E C I S I O N

### I.

Benjamin argues that the district court erred by failing to suppress his statement to the police because the "questioning occurred under circumstances that a reasonable person would consider as being consistent with formal arrest" and the police were therefore required to advise him of his *Miranda* rights.

*Miranda v. Arizona* provides procedural safeguards to protect an individual's Fifth Amendment privilege against self-incrimination. 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630 (1966). "Statements made by a suspect during custodial interrogation are generally inadmissible unless the suspect is first given a Miranda warning." *State v. Edrozo*, 578 N.W.2d 719, 724 (Minn. 1998). The parties stipulated in district court that Officer Roue's questioning of Benjamin constituted interrogation. We therefore focus our analysis on whether Benjamin was in custody during the interrogation.

> The United States Supreme Court describes custody as a term of art to specify circumstances that present a serious danger of coercion. Recently, [the Minnesota Supreme Court has] explained that an interrogation is custodial if, based on all the surrounding circumstances, a reasonable person would believe he or she was in police custody to the degree associated with formal arrest. The test is not merely whether a reasonable person would believe he or she was not free to leave. Instead, numerous factors are considered.

*State v. Scruggs*, 822 N.W.2d 631, 637 (Minn. 2012) (citations and quotation omitted).

5

Factors suggesting that a person is in custody include:

> (1) the police interviewing the suspect at the police station; (2) the suspect being told he or she is a prime suspect in a crime; (3) the police restraining the suspect's freedom of movement; (4) the suspect making a significantly incriminating statement; (5) the presence of multiple officers; and (6) a gun pointing at the suspect.

*Id.* (quotation omitted).

Factors suggesting that a person is not in custody include:

> (1) questioning the suspect in his or her home; (2) law enforcement expressly informing the suspect that he or she is not under arrest; (3) the suspect's leaving the police station without hindrance; (4) the brevity of questioning; (5) the suspect's ability to leave at any time; (6) the existence of a nonthreatening environment; and (7) the suspect's ability to make phone calls.

*Id.* (quotation omitted).

Determining whether an interrogation is custodial is a mixed question of law and fact. *State v. Horst*, ___ N.W.2d ___, ___, 2016 WL 2908009, at *3 (Minn. May 18, 2016). A district court's factual findings are reviewed for clear error, and its legal conclusion regarding whether the interrogation was custodial is reviewed independently. *Id.* "If the district court applies the correct legal standard, [appellate courts] grant considerable, but not unlimited, deference to the district court's fact-specific resolution of whether the interrogation was custodial." *Id.* (quotation omitted).

A reasonable person in Benjamin's situation would not have believed that he was in police custody to the degree associated with formal arrest. The questioning took place in Benjamin's home in a nonthreatening environment. Benjamin was unrestrained and sat on

6

his couch. Nicholas and Officer Roue initially informed Benjamin that he was not under arrest. And Officer Roue twice told Benjamin that he did not have to talk and that he did not have to answer questions. *See State v. Norberg*, 423 N.W.2d 733, 736 (Minn. App. 1988) (concluding that defendant was not in custody in part because the officer told him that he did not have to answer any questions); *see also United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) ("The most obvious and effective means of demonstrating that a suspect has not been taken into custody or otherwise deprived of freedom of action is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." (citation and quotation omitted)).

Benjamin notes the presence of several factors suggesting that he was in custody. For example, Benjamin argues that Officer Roue effectively told him that he was a prime suspect in a crime when Officer Roue informed him that he wanted to talk to him about the alleged assault against M.H. Benjamin also argues that he made "a significantly incriminating statement during the interrogation." Benjamin further argues that "there were multiple officers present and their positioning within the room effectively restrained [his] freedom of movement." But a determination regarding whether an interrogation is custodial is "based on all the surrounding circumstances" and "no factor alone is determinative." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010). Moreover, "a significantly incriminating statement does not automatically convert a noncustodial interrogation into a custodial interrogation." *State v. Vue*, 797 N.W.2d 5, 11 (Minn. 2011). And this court has held that "the presence of uniformed officers at [a suspect's] home was not enough of a restraint on his freedom of movement to bring the questioning under

*Miranda*" even when the officers told the suspect that they were investigating him for a theft of a television. *State v. Larson*, 346 N.W.2d 199, 200-01 (Minn. App. 1984).

Benjamin argues that "in light of the admissions to the violations of probation, any reasonable person in this situation would have believed he was in custody to the degree associated with arrest." (Quotation omitted.) But "custody for an unrelated offense is not custody for all purposes under *Miranda*," and courts "must look to the circumstances of the custody and determine whether it would cause a reasonable person to feel compelled or coerced to confess to the offense for which the interrogation is being conducted." *State v. Tibiatowski*, 590 N.W.2d 305, 308-09 (Minn. 1999) (stating that "the concern behind the *Miranda* decision was the possibility that confessions would be coerced from a suspect"). The circumstances of this case do not suggest that a reasonable person in Benjamin's situation would have felt compelled or coerced to confess. Officer Roue told Benjamin that he did not have to talk to the officers about the alleged assault or answer their questions. Benjamin unequivocally stated that he wanted to talk, replying: "I'm gonna talk to you about it." Given all of the circumstances, the district court did not err by determining that Benjamin was not in custody for *Miranda* purposes and denying his motion to suppress.

**II.**

Benjamin argues that his "27-month sentence for domestic assault must be vacated because the offense was committed as part of the same behavioral incident as the second-degree assault for which he was also sentenced." The state counters that when it asked the district court to impose consecutive sentences, Benjamin asked for concurrent sentences and his attorney stated that "if the court gives him concurrent sentences, we're not going

8

to argue about [whether the crimes were part of a single behavioral incident].” The state contends that because Benjamin did not object to multiple sentences, this court should review the issue for plain error. But “the prohibition against double punishment [under Minn. Stat. § 609.035] cannot be waived.” *State v. White*, 300 Minn. 99, 105-06, 219 N.W.2d 89, 93 (1974).

“[I]f a person’s conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them.” Minn. Stat. § 609.035, subd. 1 (2014). “The principle that only one sentence may be imposed based on a single behavioral incident protects defendants from both multiple sentences and multiple prosecutions. . . .” *State v. Williams*, 608 N.W.2d 837, 841 (Minn. 2000). The state bears the burden of proving by a preponderance of the evidence that multiple criminal offenses did not arise from a single behavioral incident. *State v. McCauley*, 820 N.W.2d 577, 591 (Minn. App. 2012), *review denied* (Minn. Oct. 24, 2012).

“Whether the offenses arose from the same behavioral incident depends on the facts and circumstances of the particular case.” *State v. Bauer*, 776 N.W.2d 462, 477 (Minn. App. 2009), *aff’d*, 792 N.W.2d 825 (Minn. 2011). When both offenses are intentional, we “consider whether the conduct (1) shares a unity of time and place and (2) was motivated by an effort to obtain a single criminal objective.” *Id.* at 478. The question of whether multiple offenses are part of a single behavioral incident is reviewed de novo. *See State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012) (“Whether an offense is subject to multiple

9

sentences under Minn. Stat. § 609.035 is a question of law, which [appellate courts] review de novo.").

At trial, M.H. described several of Benjamin's assaultive acts. She testified that around 12:30 a.m. on March 1, Benjamin pushed her against a wall and held a knife against her bare skin. M.H. testified that she and Benjamin started arguing again around 6:30 a.m. M.H. testified that Benjamin straddled her and pushed on her neck until she felt like she could not breathe. M.H. further testified that after she got up from being choked, Benjamin grabbed her by her ponytail and pulled her back down to the floor like a "rag doll." M.H. testified that Benjamin later bit her on her left forearm. M.H. also testified that Benjamin hit her left breast and hit her arm. She could not remember if that happened before or after the knife incident.

During closing argument, while discussing the domestic-assault charge, the state argued that "here you have a lot of different things that constitute assault." The state reviewed the acts that M.H. described during her testimony, including "threatening to hold a knife to her neck, going to get that knife and approaching her with the knife and then holding it to her neck."

Benjamin points out that "the state expressly told the jury that it could find [him] guilty of domestic assault based upon the *exact same facts* which it had already argued made him guilty of second-degree assault as well." Benjamin argues that the state therefore "cannot meet its burden of showing that the jury's guilty verdicts were even based on separate *conduct*, much less separate behavioral incidents."

Benjamin's argument is persuasive. The state did not request, and the district court did not submit, a special interrogatory asking the jury to identify the conduct on which it based its finding of guilt on the domestic-assault charge. Because we cannot identify the conduct that is the basis for the jury's domestic-assault verdict, the state cannot meet its burden of proving by a preponderance of the evidence that the domestic assault and second-degree assault did not arise from a single behavioral incident. We therefore reverse the district court's imposition of sentence on the domestic-assault conviction and remand for the district court to vacate the sentence.

### III.

In his pro se supplemental brief, Benjamin raises two issues. First, he generally challenges M.H.'s credibility. We liberally construe this argument as a challenge to the sufficiency of the evidence to sustain his convictions.

When considering a claim of insufficient evidence, this court carefully analyzes the record to determine whether the evidence, viewed in the light most favorable to the conviction, was sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). Because a jury is in the best position to evaluate the credibility of witnesses and weigh evidence, we give a jury verdict "due deference." *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). We assume the jury was persuaded by the evidence supporting the conviction, especially "where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the

11

requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Benjamin's challenge to M.H.'s credibility is unavailing. The jury's verdicts indicate that it found M.H. credible, and we defer to its credibility determination. Moreover, when the evidence is viewed in the light most favorable to conviction, it is sufficient to sustain the verdicts. The jury could reasonably conclude, beyond a reasonable doubt, that Benjamin was guilty of second-degree assault and domestic assault. We therefore do not disturb the verdicts.

Benjamin's second pro se argument addresses the alleged *Miranda* violation. We have considered the *Miranda* issue as raised by counsel in Benjamin's principal brief. Because Benjamin's pro se supplemental brief does not provide additional legal argument or authority regarding this issue, we do not discuss it further.

**Affirmed in part, reversed in part, and remanded.**